**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| MICHAEL BARONE, )<br> )<br>  Plaintiff, )<br> )<br>  v. )<br> )<br>ALLEGHENY COUNTY, RICH )<br>FITZGERALD, LAURA ZASPEL, LAURA )<br>WILLIAMS, STEPHEN PILARSKI, )<br>BLYTHE TOMA, NICHOLE NAGEL, )<br>DEBRA BOGEN,  DOES 1-20, )<br> )<br>  Defendants. ) | Civil Action No. 23-1691 |

## <u>MEMORANDUM OPINION</u>

Plaintiff Michael Barone ("Barone") initiated this suit against his former employer—Allegheny County—and the above-captioned county actors after his employment as a county corrections officer was terminated because he refused to comply with the County's COVID-19 vaccination policy in 2021.  Defendants contend that Barone's allegations in his Amended Complaint do not add up to any plausible claims, so they seek dismissal of those claims in their pending Motion to Dismiss.  (Docket No. 19).  In addition to arguing that Barone's allegations are inadequate, Defendants argue that Barone cannot show the individual Defendants' personal involvement in the alleged deprivations of his rights.  (Docket No. 20 at 4-5).  Barone opposes the motion to dismiss.  (Docket No. 23).  For the reasons set forth herein, the Court will <u>grant</u> the motion and <u>dismiss</u> the claims in Barone's Amended Complaint.

## I.    <u>BACKGROUND</u>[1]

In the Amended Complaint (Docket No. 18), Barone alleges that he was a corrections officer for the county jail before the events giving rise to this suit.  He alleges that he had "demonstrated outstanding commitment" to his employer and "was an exemplary employee." (*Id.* ¶ 63).  Despite his record of exemplary employment, Barone alleges that he was terminated from his employment with Allegheny County on December 23, 2021, because of Allegheny County's implementation of a vaccinate-or-terminate policy (hereinafter "the Policy"). (*Id.* ¶¶ 9, 18, 27).[2] Barone alleges that Defendants Fitzgerald, Pilarski, and Bogen were responsible for creating the Policy. (*Id.* ¶ 28).

On August 6, 2021, Barone was informed that "effective … August 9, 2021 all the Allegheny County employees must get a COVID-19 vaccination or be subjected to a mask requirement and regular COVID-19 testing." (*Id.* ¶ 61).  At some point thereafter, Barone sought a medical exemption from the vaccination requirement due to a congenital heart defect and concerns about "putting chemicals in his body" and "minimizing exposure to synthetic materials."

---

[1]    Because the parties are familiar with the factual and procedural history of this case, the Court herein provides an abbreviated summary of the case background.  The Court's summary is drawn from the Amended Complaint.  As this matter is being presented to the Court on a motion to dismiss, the Court presently "accept[s] all factual allegations as true, construe[s] the complaint in the light most favorable to the plaintiff, and determine[s] whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Chesher v. Allegheny Cnty.*, No. 2:22-CV-01822-MJH, 2024 WL 2248207, at *3 (W.D. Pa. May 16, 2024) (quoting *Eid v. Thompson*, 740 F.3d 118, 122 (3d Cir. 2014)).  Barone is representing himself in this matter, so the Court will be more flexible with him than it would be with a counseled party; however, the Court will hold Barone to the "same rules that apply to all other litigants" in keeping with the well-established limits to the grace extended by the courts to the unrepresented. *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244-45 (3d Cir. 2013) (discussing pleading standards for pro se litigants).

[2]    In the Amended Complaint, Barone alleges he was an employee of Allegheny County. (*Id.* ¶ 18). Regarding the roles in Allegheny County of other Defendants, he further alleges: Fitzgerald was an executive officer, Zaspel was a human resources director, Williams was the former chief deputy warden of health services at the county jail, Pilarski was a senior deputy county manager, Nagle was an employee relations manager, Toma was an employee, and Bogen was a senior health director. (*Id.* ¶¶ 20-26).  Barone indicates that the individual Defendants are sued in their individual and official capacities. (*Id.*).

(*Id.* ¶ 72). Barone alleges he explained his medical risk to Defendants, including presenting them with links to information on, among other things, myocarditis. (*Id.* ¶ 73).

Barone also submitted religious exemption requests to Defendants, which Zaspel, Nagel, Williams, and Toma denied. (*Id.* ¶ 74). Barone alleges that Defendants acted with retaliatory animus and deliberate indifference toward his beliefs and health concerns, and unlawfully sought his termination, in addition to subjecting him to other discriminatory treatment. (*Id.* ¶ 75). Regarding his religious objection to vaccination,[3] Barone alleges that he has "deep religious beliefs that prevented him from being subject to the injection" and that he "stated clearly that taking the injection would be against his conscience." (*Id.* ¶ 83). He "wholeheartedly believes that any COVID injection would defile his body" and that he therefore "submitted a religious exemption and accommodation request in good faith" that was denied by Allegheny County. (*Id.* ¶ 84).

Barone identifies ten claims arising from his factual allegations. First, Barone alleges and argues that by denying his exemption requests and then terminating his employment, Defendants violated his right to freely exercise his religious beliefs, guaranteed under the First Amendment. (*Id.* ¶ 96). Second, Barone alleges that because County employees who *were vaccinated* were treated as a preferred class (receiving a financial award and 80-hours' paid leave, not being required to test for COVID-19, and not being terminated), Defendants violated his rights under the equal protection clause of the Fourteenth Amendment. (*Id.* ¶¶ 105-09). Third, Barone alleges that he was denied his substantive due process rights under the Fourteenth Amendment because he was prohibited from continuing his work in an arbitrary, capricious, and unfair manner. (*Id.* ¶¶ 111,

---

[3]     In the Amended Complaint, Barone refers to COVID-19 "injections" rather than vaccination(s) because he refutes their classification as vaccinations. The Court accepts Barone's facts and draws inferences in his favor at this juncture, however, the Court will refer herein to "vaccines" or "vaccination" for readability and consistency of terminology in its orders and opinions.

115).  Fourth, Barone alleges his procedural due process rights under the Fourteenth Amendment were also trampled on because the decision-making process for his religious exemption request was concealed from him and there was no appeal process by which he could seek to challenge Allegheny County's uniform denial of all religious exemption requests.  (*Id.* ¶¶ 117, 119).  To that end, Barone alleges that he received only the "charade of due process" in the form of "Louder mill [sic] hearings," which were a sham because he "knew he was going to be terminated from the beginning."  (*Id.* ¶ 120).

Fifth, Barone seeks to pursue a claim arising under the Food and Drug Cosmetic Act, Sec. 564, in support of which he argues that Allegheny County failed to disclose certain information about COVID-19 vaccination, *e.g.*, that he had the option to refuse administration of an emergency-use-authorized product.  (*Id.* ¶¶ 122-30).  Sixth, Barone seeks to bring a claim under the Emoluments Clause and, to that end, he alleges that Fitzgerald used his office for unjust reasons and bullied Barone into abandoning his convictions.  (*Id.* ¶ 131-34).  Seventh, Barone alleges that Defendants violated Title VII, 42 U.S.C. § 2000e, *et seq.*, by discriminating against him by giving financial incentives and other favorable treatment to workers who agreed to vaccination.  (*Id.* ¶¶ 135-39).  To that end, he alleges that he was "treated like a second-class employee" and terminated because he would not "take an experimental injection, which is designed in a laboratory" and "prohibited in [his] religious practices."  (*Id.* ¶ 140).

Brown's remaining claims include various tort claims.  His eighth claim is an allegation of intentional misrepresentation insofar as Defendants concealed that the purported COVID-19 vaccine was not really a vaccine at all.  (*Id.* ¶¶ 149-57).  His ninth claim is a claim of tortious interference of contract, in support of which he alleges that Defendants intentionally interfered with his contract by making his employment contingent upon vaccination status.  (*Id.* ¶¶ 158-147

[sic]).  Barone's tenth and final claim is that Defendants participated in a conspiracy to deprive him of his rights.  (*Id.* ¶¶ 148-49 [sic]).  As indicated above, Defendants have moved to dismiss these claims, and such motion is fully briefed and ready for decision.

## II.    LEGAL STANDARDS

In considering a Rule 12(b)(6) motion to dismiss, the factual allegations contained in a complaint must be accepted as true and must be construed in the light most favorable to the plaintiff, and the Court must "determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips v. County of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008) (quoting *Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 374 n. 7 (3d Cir. 2002)); *see Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 563 n.8 (2007).  While Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," the complaint must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Phillips*, 515 F.3d at 231 (quoting *Twombly*, 550 U.S. at 555).  Moreover, while this standard does not require "detailed factual allegations," Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555).

To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570).  The requirement that a court accept as true all factual allegations does not extend to legal conclusions; thus, a court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Id.* (quoting *Twombly*, 550 U.S. at 555).  The Supreme Court has noted that a "claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing

*Twombly*, 550 U.S. at 556).  The standard is not so demanding as to "impose a probability requirement at the pleading stage." *Phillips*, 515 F.3d at 234 (quoting *Twombly*, 550 U.S. at 556).

Barone's lawsuit is the latest in a string of such suits against the County asserting Constitutional and other challenges to the County's Policy.  *Kehl v. Allegheny Cnty.*, No. 2:24-CV-00060-CCW, 2024 WL 5166776, at *5 (W.D. Pa. Dec. 19, 2024) (Weigand, J.) ("Judicial colleagues in this District have recently reviewed the same vaccine mandate at issue in this case and determined that it was constitutional as a neutral law of general applicability."); *Cuttler v. Allegheny Cnty.*, No. 2:23-CV-01875-CCW, 2024 WL 4817130, at *6 (W.D. Pa. Nov. 18, 2024) (Weigand, J.); *Chesher v. Allegheny Cnty.*, No. 2:22-CV-01822-MJH, 2024 WL 2248207, at *4 (W.D. Pa. May 16, 2024) (Horan, J.).  Barone's lawsuit itself is one of several related pro se challenges.  *Petty v. County of Allegheny*, 2:24-cv-01322-WSH; *Onyshko v. County of Allegheny*, 2:24-cv-01340-WSH; *Goodwin v. County of Allegheny*, 2:24-cv-01342-WSH.

## III. <u>DISCUSSION</u>

### *Claim I – 1st Amendment Free Exercise*

As the Court recounted *supra*, Section I (Background), Barone's first claim is that Defendants violated his constitutional right to freely exercise his religion by Defendants' denial of his request for religious exemption from the Policy, and by the resultant termination of his employment.[4]  Defendants argue for dismissal of this claim and contend, among other things, that vaccination mandates have long been upheld against constitutional challenges.  (Docket No. 21).

---

[4]    Barone's constitutional claims are asserted under 42 U.S.C. § 1983, pursuant to which he must show that Defendants acted under the color of state law and, in doing so, deprived him of a federal constitutional or statutory right.  Third Cir. Model Jury Instructions, 4.3 (Section 1983 – Elements of Claim).  The Court's analysis herein focuses on whether Barone has shown deprivation of a federal right, since there is no apparent dispute that all acts relevant to this case were done under the color of state law.

"The Free Exercise Clause of the First Amendment states that 'Congress shall make no law ... prohibiting the free exercise' of religion.  This constitutional provision applies to state and local governments through the Fourteenth Amendment."  *Spivack v. City of Philadelphia*, 109 F.4th 158, 166 (3d Cir. 2024) (quoting U.S. Const. amend. I, and citing *Cantwell v. Connecticut*, 310 U.S. 296 (1940)).  When a law or policy is "neutral and generally applicable" and yet burdens religious practice, the courts subject such a law to "rational basis review," that is, reviews such laws to determine whether they are "*rationally related* to a *legitimate* interest."  *Id.*  The neutrality and general applicability inquiries get at "the same fundamental question: does the policy single out religious practices for distinctive treatment?"  *Id.* at 167.

The Court recently explained that neutrality means a law "does not target religiously motivated conduct either on its face or as applied in practice."  *Chesher*, 2024 WL 2248207, at *7 (quoting *Combs v. Homer-Center Sch. Dist.*, 540 F.3d 231, 241 (3d Cir. 2008)).  The Court further explained that a law is not "generally applicable" "if it prohibits religious conduct but permits comparable secular conduct; or (2) if it invites the government to consider the particular reasons for a person's conduct by providing a mechanism for individualized exemptions."  *Id.* at *8 (citation omitted); *Fulton v. City of Philadelphia*, 593 U.S. 522, 534 (2021).

From the Amended Complaint and Policy itself, it is evident that the Policy applied to all County employees in the Executive Branch and there are no pleaded facts that employees were exempted from the vaccine requirement for secular reasons or that individualized exceptions made such policy not generally applicable; therefore, rational basis review applies.  *Chesher*, 2024 WL 2248207, at *9.  Rational basis review requires that government action be "rationally related to a legitimate government objective."  *Id.* (quoting *Tenafly Eruv Ass'n v. Tenafly*, 309 F.3d 144, 165 n. 24 (3d Cir. 2002)).  As the Court explained in *Chesher*, Allegheny County implemented its

Policy in response to federal, state, and local health authorities' guidance on the best way to decrease the incidences of COVID-19 infection. *Id.* That is rationally related to a legitimate government objective such that the Policy "survives rational basis review." *Id.* The Court will therefore dismiss Barone's Claim I. The Court's dismissal will be without prejudice should Barone be able to allege facts curing the deficiencies identified in this section.

### *Claim II – 14th Amendment Equal Protection*

Barone's second claim is that the Policy created two classes of people employed by the County: those who consented to vaccination; and those who refused vaccination, and that the latter of these categories were subject to worse treatment than the former. Specifically, Barone alleges that those who were vaccinated were rewarded with "a financial award, 80 hours of paid leave, in addition to not being subjected to testing for COVID-19 and kept their status in the workplace." (Docket No. 18 at ¶ 107). Defendants seek dismissal of this claim, arguing that Barone has neither shown he is a member of a protected class, nor that he was treated differently than similarly situated individuals. (Docket No. 21 at 9-10).

The Fourteenth Amendment guarantees equal protection under the law, meaning that "all persons similarly situated should be treated alike." *Chesher*, 2024 WL 2248207, at *9 (quoting *Children's Health Defense, Inc. v. Rutgers*, 93 F.4th 66, 83 (3d Cir. 2024)). Generally, the "fundamental elements" of an equal protection claim are "that [plaintiff] is a member of a suspect class being treated differently than others who are similarly situated." *Fontanez v. Pennsylvania*, 570 F. App'x 115, 116 (3d Cir. 2014). As Defendants point out, Barone specifically alleges that he was treated differently than those who were vaccinated, that is, those who were not similarly situated. *Cuttler*, 2024 WL 4817130, at *5 ("And although he asserts that he was in 'an inferior subclass of people' as an unvaccinated employee, he cannot show that he was similarly situated to

his vaccinated co-workers *because* they held different vaccinated statuses."); *Kehl*, 2024 WL 5166776, at *7. Moreover, "[e]ven if vaccinated and unvaccinated employees were 'similarly situated,' … Equal Protection claims would fail" in this matter because "[t]he Third Circuit has found that only classifications involving a protected class are subject to heightened scrutiny—and being unvaccinated 'does not confer protected status.'" *Id.* (quoting *Children's Health Def., Inc.*, 93 F.4th at 84 n. 38). Accordingly, the "vaccine mandate and differential treatment of unvaccinated employees would only need to survive rational basis review," *id.*, which the Court already addressed in its discussion of Barone's Free Exercise claim. For that reason the Court will dismiss Barone's Claim II. Such claim will be dismissed with prejudice, it appearing that any amendment would be futile.

### Claim III – 14th Amendment Substantive Due Process

Barone next claims that his substantive due process rights under the Fourteenth Amendment were infringed because he had the "right to participate in the workplace without being barred from doing so by arbitrary, capricious and unfair standards placed upon him." (Docket No. 18 at ¶ 111). Defendants seek dismissal of this claim and argue that vaccine mandates like the one ushered in by the Policy do not implicate fundamental rights, rational basis review applies, and the Policy satisfies rational basis review by a wide margin. (Docket No. 21 at 11-12).

The United States Court of Appeals for the Third Circuit has held that there is "no fundamental right to refuse vaccination." *Children's Health Def., Inc.*, 93 F.4th at 78 (citing *Klaassen v. Trs. of Indiana Univ.*, 7 F.4th 592, 593 (7th Cir. 2021) ("Given *Jacobson v. Massachusetts*, 197 U.S. 11 (1905), which holds that a state may require all members of the public to be vaccinated against smallpox, there can't be a constitutional problem with vaccination against

SARS-CoV-2.")).  Therefore, rational basis review applies.  Under rational basis review there need only be "a satisfactory, rational explanation" for the Policy.  *Id.* at 81.

As discussed above, Defendants in this matter acted on federal, state, and local health authorities' guidance in instituting the Policy requiring employee vaccination to curb the spread of COVID-19.  The Supreme Court instructs that "[c]urbing the spread of COVID-19 is 'unquestionably a compelling interest.'"  *Id.* (quoting *Roman Cath. Diocese of Brooklyn v. Cuomo*, 592 U.S. 14, 18 (2020) (per curiam)).  So, the County's stated purpose for its Policy and vaccination mandate satisfies the rational basis test here.  *Kehl*, 2024 WL 5166776, at *6; *Chesher*, 2024 WL 2248207, at *12 ("Adherence to the directives and guidance from federal, state, and county health agencies, is a rational explanation for implementing the vaccine mandate.").[5] Accordingly, the Court will dismiss Barone's Claim III, and such dismissal will be with prejudice.

### Claim IV – 14th Amendment Procedural Due Process

For his fourth claim, Barone alleges that Defendants deprived him of his procedural due process rights by concealing the decision-making process on his request for religious exemption from the Policy, and concluded the review of his request for exemption "without consulting experts of any kind" and without providing an appeals process.  (Docket No. 18 at ¶¶ 117-18).  Barone further alleges that his *Loudermill* (termination) hearing was a "charade of due process" and a

---

[5]     As discussed above, the County professed that its Policy was premised on guidance issued by federal, state, and local health authorities.  The decision of whether to defer to a particular authority, expert, or experts is the prerogative the people through their duly elected lawmakers, and "the legislature has the right to pass laws which, according to the common belief of the people, are adapted to prevent the spread of contagious diseases."  *Children's Health Def., Inc*., 93 F.4th at 79 (quoting *Jacobson*, 197 U.S. 11, 35).  Thus, while "the American people and their representatives are entitled to disagree with those who hold themselves out as experts," courts may not exercise their power to "weigh the wisdom of legislation" as though the courts were super-legislative bodies.  *United States v. Skrmetti*, 605 U.S. ___, 145 S. Ct. 1816, 1840 (2025) (Thomas, J., concurring) (quoting *Day-Brite Lighting, Inc. v. Missouri*, 342 U.S. 421, 423 (1952).  Thus, any questions about the bases and efficacy of public health guidance imposed on our communities to address COVID-19 that have arisen since the height of public concern on the matter are largely outside the parameters of the issues presented in this suit.

decision to terminate him had already been made. (*Id.* ¶ 120). Defendants argue that the procedures that were available to Barone satisfy what the Fourteenth Amendment guarantees from a procedural due process standpoint. (Docket No. 21 at 13-14).

To adequately allege a "deprivation of procedural due process rights, a plaintiff must allege that (1) he was deprived of an individual interest that is encompassed within the Fourteenth Amendment's protection of 'life, liberty, or property,' and (2) the procedures available to him did not provide 'due process of law.'" *Hill v. Borough of Kutztown*, 455 F.3d 225, 233–34 (3d Cir. 2006) (quoting *Alvin v. Suzuki,* 227 F.3d 107, 116 (3d Cir. 2000)). Barone's allegations include that his employment interests were represented by his union in proceedings brought before the labor relations board. (Docket No. 18 at ¶ 58). As Defendants point out, the Third Circuit has held that in cases like this one where a plaintiff-employee of a public employer had recourse to "grievance and arbitration procedures" which were in place, the requirements of procedural due process are satisfied. *Leheny v. City of Pittsburgh*, 183 F.3d 220, 228 (3d Cir. 1999). For that reason, the Court will dismiss Barone's Claim IV, and will do so with prejudice.

### Claim V – Violation of the Food, Drug, and Cosmetic Act

Barone's next claim is that Defendants violated the Food, Drug, and Cosmetic Act insofar as FDA authorization of emergency use of medical treatments requires certain disclosures such as "the option to accept or refuse administration of the product," and yet Defendants did not disclose "required information to [him] … and unlawfully terminated [his] employment." (Docket No. 18 at ¶¶ 124-26). Barone further alleges that Allegheny County receives federal grants that require avoidance of constitutional and statutory violations, and yet they violated the law as it applied to him. (*Id.* ¶ 127). Defendants seek dismissal of this claim and argue there is no cause of action under the Food, Drug, and Cosmetic Act for Barone.

Courts that have considered this argument agree that there is no private right of action under the Food, Drug, and Cosmetic Act's Emergency Use Authorization provision.  *Doe v. Franklin Square Union Free Sch. Dist.*, 568 F. Supp. 3d 270, 292 (E.D.N.Y. 2021) ("Section 564 does not include a private right of action."); *Arroyo-Bey v. Manhattan N. Mgmt. Co. Inc.*, No. 22-CV-4789 (AT), 2022 WL 2805635, at *1 (S.D.N.Y. July 18, 2022) ("[T]here is no private right of action to enforce alleged violations of the emergency use authorization itself."); *Johnson v. Tyson Foods, Inc.*, 607 F. Supp. 3d 790, 806 (W.D. Tenn. 2022) ("[T]here is no private right of action under that statute.").  For that reason, the Court will dismiss Barone's Claim V.  Because any amendment of this claim would be futile, Claim V will be dismissed with prejudice.

### Claim VII[6] – Violation of the Emoluments Clause

In Claim VII, Barone alleges that Defendant Fitzgerald, acting in his official capacity, violated his oath of office and used his office for his "personal and political agenda," specifically to "bull[y]" Barone into abandoning his personal beliefs.  (Docket No. 18 at ¶¶ 132-33).  Defendants argue that Barone has not stated a claim under the Foreign Emoluments Clause, which forbids any person holding any office of profit or trust from accepting "any present, Emolument, Office, or Title, of any kind whatever, from any King, Prince, or foreign State" without Congress's consent.  (Docket No. 21 at 17 (citing U.S. Const. art. I, § 9, cl. 8)).[7]  Defendants specifically argue

---

[6]    There is no Claim VI in the Amended Complaint.  The Court will use Barone's numbering of the claims to avoid confusion.

[7]    In the Amended Complaint, Barone alleges a violation of the Emoluments Clause generally, but because the Domestic Emoluments clause would not apply to Defendant Fitzgerald, the Court assumes in its analysis that Barone means to refer more specifically to the Foreign Emoluments Clause.  *Citizens for Resp. & Ethics in Washington v. Trump*, 276 F. Supp. 3d 174, 181 (S.D.N.Y. 2017), *vacated and remanded*, 939 F.3d 131 (2d Cir. 2019), *and vacated and remanded,* 953 F.3d 178 (2d Cir. 2019), *as amended* (Mar. 20, 2020) ("The Domestic Emoluments Clause states that '[t]he President shall, at stated Times, receive for his Services, a Compensation, which shall neither be encreased nor diminished during the Period for which he shall have been elected, and he shall not receive within that Period any other Emolument from the United States, or any of them.'" (quoting U.S. Const. art. II, § 1, cl. 7)).

that there are not sufficient allegations to show that Defendant Fitzgerald is "within the scope of the Emoluments Clause" because he is not a federal official.  (*Id.*).

The Court agrees with Defendants that the provision of the Constitution to which Barone appeals does not apply to Defendant Fitzgerald, who is not a federal office holder.  U.S. Const. art. I, § 9, cl. 8 (Foreign Emoluments Clause); *Citizens for Resp. & Ethics in Washington v. Trump*, 971 F.3d 102, 131–32 (2d Cir. 2020) ("[W]ere Mr. Trump not a federal office holder, his receipt of emoluments from domestic or foreign governments would not fall within the restrictions of the Constitution."); *Price v. Kagay*, No. 22-3003-SAC, 2022 WL 814371, at *1 (D. Kan. Mar. 17, 2022) ("By its terms, [the Foreign Emoluments Clause] only applies to certain federal officials, not the defendants named by Plaintiff who are local police officers.").  For that reason the Court will dismiss Barone's Claim VII, and dismissal of such claim will be with prejudice because the inapplicability of the invoked provision makes amendment futile.

### *Claim VIII – Title VII Disparate Treatment, Religious Discrimination*

Barone alleges in Claim VIII that Defendants violated Title VII by discriminating against him on the basis of religion when they provided financial incentives to those who agreed to vaccination, when they restricted his workplace access, and by their "intrusive interrogation concerning [Barone and others'] personal matters," because the actions were taken on account of Barone's deeply held religious beliefs about his body being a temple and not wanting to defile it by experimental injection which he alleges is prohibited by his religious practices.  (Docket No. 18 at ¶ 138-40).  Barone argues that Defendants thus violated 42 U.S.C. § 2000(a)(1)(2).  Barone also alleges that: he was provided only a sham procedure for the consideration of his religious exemption request all of which, for him and his colleagues, were denied; Defendant Fitzgerald and the other Defendants acted in concert to terminate his employment; and that Defendants' conduct

further constituted a denial of his request for a reasonable accommodation of a person with a disability. (*Id.* ¶¶ 144-46). Defendants argue that Barone cannot pursue a Title VII claim because he has not alleged exhaustion of administrative remedies of such a claim or claims.

"To bring a claim under Title VII, a plaintiff must file a charge of discrimination with the EEOC and procure a notice of the right to sue." *Mandel v. M & Q Packaging Corp.*, 706 F.3d 157, 163 (3d Cir. 2013). In his Amended Complaint, Barone appears to indicate that he did not exhaust his administrative remedies: "BARONE exercised his right to have this matter adjudicated outside the EEOC. Equally the same without their union. A federal statutes has been violated and caused injury to BARONE, which gives BARONE a right to a cause of action specifically because COUNTY is liable and received federal awards in the form of monies to mitigate the COVID-19 event." (Docket No. 18 at ¶ 146).

However, Defendants (in their Reply Brief) indicate by attachment that Barone filed a Charge of Discrimination with the EEOC on January 26, 2022, and that the EEOC issued a right-to-sue letter to Barone on August 12, 2022. (Docket No. 25-1, 25-2).[8] In the charge of discrimination, Barone indicated that he had worked as a corrections officer and that he submitted a request for exemption from the Policy due to his Christian religion. (*Id.*). He further indicated that his request was denied and that he was discharged December 21, 2021, because he did not get the COVID-19 vaccine. The EEOC sent Barone a right-to-sue letter, signed August 12, 2022, indicating that EEOC was "closing the charge," that Barone had the right to sue, and that if Barone chose to file a lawsuit, he needed to do so within 90 days of his receipt of the notice. (Docket No.

---

[8]     The Court may consider these documents at this juncture because "in the Third Circuit, it is well settled that a court may consider administrative documents, such as a plaintiff's EEOC charges, and public records without converting the motion to dismiss to a motion for summary judgment." *Wormack v. Shinseki*, No. 2:09-CV-916, 2010 WL 2650430, at *1 (W.D. Pa. July 1, 2010).

25-2).  Barone initiated this case on September 25, 2023, long after the 90-day window for filing

suit had closed.  (Docket No. 1).  For that reason, the Court will dismiss Claim VIII.

Dismissal of such claim will be without prejudice should Barone have a basis for seeking

equitable tolling of the 90-day period for filing suit.  *See Rockmore v. Harrisburg Prop. Serv.*, 501

F. App'x 161, 164 (3d Cir. 2012) (explaining that the 90-day time limit is "akin to a statute of

limitations and is therefore subject to equitable tolling").  That said, the Court will dismiss

Barone's Title VII claim with prejudice to the extent that he attempts to assert any such claim

against individual employees—rather than his employer—because Title VII does not impose

liability on such individuals.  *Sheridan v. E.I. DuPont de Nemours & Co.*, 100 F.3d 1061, 1078

(3d Cir. 1996) ("Congress did not intend to hold individual employees liable under Title VII.").[9]

### *Claim IX – Intentional Misrepresentation*

In addition to his civil rights and discrimination claims, Barone also seeks to pursue several

tort claims.  He alleges intentional misrepresentation insofar as Defendants intentionally

misrepresented the COVID-19 vaccine's true nature—that is, that it was not a vaccine, but a

medical treatment.  (Docket No. 18 at ¶ 152).  Barone alleges that the vaccine was an "unapproved

medical procedure" but that Allegheny County's objective was to represent it as a vaccine to

"coerce compliance with [its] misleading assertions through intimidation and pressure over the

loss of … career."  (*Id.* ¶ 154).  Barone alleges that such actions caused him anxiety and emotional

distress, and he states that he had "a reasonable right not to be subjected to such dishonorable

treatment that used fraudulent misrepresentations."  (*Id.* ¶¶ 155-56).  Barone accuses Allegheny

---

[9]      The Court additionally points out that Barone's allegations regarding his religious beliefs are
problematically non-specific.  Religious objection cases require "courts [to] examine whether a belief is a
religious one, as opposed to a personal belief cloaked in religion," and therefore demand greater detail than
what is found presently in Barone's Amended Complaint.  *McDowell v. Bayhealth Med. Ctr., Inc.*, No. 24-
1157, 2024 WL 4799870, at *1 (3d Cir. Nov. 15, 2024).

County, Bogen, and Fitzgerald particularly in this regard. (*Id.* ¶ 157). Defendants argue that Barone has not alleged facts in support of each element of intentional misrepresentation and that the claim should therefore be dismissed.

The elements of a claim of intentional misrepresentation under Pennsylvania law are: "(1) a representation; (2) which is material to the transaction at hand; (3) made falsely, with knowledge of its falsity or recklessness as to whether it is true or false; (4) with the intent of misleading another into relying on it; (5) justifiable reliance on the misrepresentation; and (6) the resulting injury was proximately caused by the reliance." *Bull Int'l, Inc. v. MTD Consumer Grp., Inc*., 654 F. App'x 80, 104 (3d Cir. 2016) (citing *Gibbs v. Ernst*, 647 A.2d 882, 889 (Pa. 1994)). In this case, Barone's entire case is premised on his allegations that despite Defendants' representations and vaccination directives, he *did not* vaccinate. There are no facts in the Amended Complaint that show how he relied upon the alleged misrepresentation when his theory of the case is, effectively, that he was fired because he refused to be vaccinated after seeing through Defendants' misrepresentations. For that reason, the Court will dismiss Barone's Claim IX. This dismissal will be without prejudice because the Court cannot say, on the limited fact allegations before it, that any amendment would be futile.

### Claim X – Tortious Interference of Contract

In Claim X, Barone alleges that Defendants' interfered with his contractual relationship with Allegheny County when, despite the lack of any written or oral agreement on vaccination status being part of his employment agreement, Defendants changed the terms of the contract without reasonable negotiations. (Docket No. 18 at ¶ 160). Barone alleges that Defendant Fitzgerald acted ultra vires in changing the terms of his contract and causing his termination. (*Id.* ¶ 144). Barone also alleges that all Defendants "worked independently and jointly to unreasonably

16

and willfully interfere" with the contract between Barone and Allegheny County. (*Id.* ¶ 145). Barone also alleges this was done "pre-meditatively" and in concert, and that it caused him to suffer financial harm. (*Id.* ¶¶ 146, 148). Defendants argue for dismissal of Claim X because Pennsylvania law does not recognize a tortious interference with contract claim when such claim is asserted against management by an employee concerning the employment contract, and because this claim is a pendant state tort claim and Allegheny County is protected by the Political Subdivision Tort Claims Act. (Docket No. 21 at 21-22).

Defendants are correct that the tort of contract interference is available only to remedy interference by some third party. *DuSesoi v. United Ref. Co.*, 540 F. Supp. 1260, 1275 (W.D. Pa. 1982); *Kornaga v. Progress Lighting, Inc.*, No. CIV. A. 93-402, 1993 WL 124637, at *2 (E.D. Pa. Apr. 15, 1993) ("Plaintiff's claim for intentional interference with contract must be dismissed because the defendant cannot be held liable for interfering with a contract to which it is a party."). This applies to Defendant Allegheny County as well as the individual Defendants. None of the latter are alleged to have interfered with Barone's contract outside of their job, so as there is no tortious interference claim against Allegheny County, so too there is no tortious interference claim to be made against the individual Defendants who are employed by the county. *Kornaga*, 1993 WL 124637, at *2 ("The individual defendants are also not liable for tortious interference with contract for actions taken within the scope of their employment" because "[a] corporation is a creature of legal fiction, and must 'act' through its officers, directors and agents," so "the acts of the agent are the acts of the corporation unless the agent is working outside the scope of his employment." (citations omitted)). The Court will dismiss this claim, and will do so with prejudice as it relates to these Defendants who are not third parties.

***Claim XI – Conspiracy to Deprive Rights***

Barone's final claim is that all Defendants violated 42 U.S.C. § 1985(3) by engaging in a conspiracy to deprive him of his civil rights and, to that end, Barone alleges that Defendants "worked in concert together, acting under color of law to deprive [him] secured, protected, and guaranteed constitutional rights." (Docket No. 18 at ¶¶ 148-49). Defendants seek dismissal of this claim and argue that Barone's allegations are speculative. (Docket No. 21 at 23).

To state a claim under 42 U.S.C. § 1985(3), a plaintiff must allege: "(1) a conspiracy; (2) motivated by a racial or class based discriminatory animus designed to deprive, directly or indirectly, any person or class of persons to the equal protection of the laws; (3) an act in furtherance of the conspiracy; and (4) an injury to person or property or the deprivation of any right or privilege of a citizen of the United States." *Zurchin v. Ambridge Area Sch. Dist*., 300 F. Supp. 3d 681, 693 (W.D. Pa. 2018). Section 1985 "does not create any substantive rights, but permits individuals to enforce substantive rights against conspiring private parties." *Farber v. City of Paterson*, 440 F.3d 131, 134 (3d Cir. 2006).

In any event, to state a plausible Section 1985(3) claim, a plaintiff "must assert facts from which a conspiratorial agreement can be inferred." *Foglesong v. Somerset Cnty*., No. 3:12-CV-77, 2013 WL 795064, at *11 (W.D. Pa. Mar. 4, 2013). Barone's allegations lack sufficient detail to support such a claim where he merely alleges that Defendants "worked in concert together" to deprive him of his rights. (Docket No. 18 at 18, ¶ 114 ("defendants … met in team meetings, and agreed to collude against BARONE"; 26, ¶ 148; 25, ¶ 145-46 (discussing tortious interference: Defendants "worked independently and jointly to unreasonably and willfully interfere and usurped [his] contract" and this "was done premeditatively and discussed in [Allegheny County]

18

meetings")).[10]  The claim will be dismissed without prejudice, to allow Barone to appropriately supplement his allegations in this regard if he is able to do so.

## IX.  CONCLUSION[11]

For all the foregoing reasons, the Court will grant Defendants' Motion to Dismiss (Docket No. 19).  As indicated above, some of Barone's claims shall be dismissed with prejudice and some shall be dismissed without prejudice.  The with/without prejudice distinction is reflected in the accompanying Order.  By such Order, the Court will afford Barone a time in which he is permitted

---

[10]    The Court additionally notes that, to the extent that individual Defendants are sued in their official capacities, Barone would be unable to maintain a conspiracy claim against them for conspiring among themselves.  *Poli v. SEPTA*, No. CIV. A. 97-6766, 1998 WL 405052, at *14 (E.D. Pa. July 7, 1998) ("A claim under section 1985(3) is subject to dismissal 'only to the extent that liability is asserted against governmental employees acting in their official capacities.'" (citation omitted)).

[11]    Defendants raise qualified immunity, and the Court acknowledges that "the Supreme Court has repeatedly stressed the importance of resolving qualified immunity 'at the earliest possible stage in litigation.'" *Stringer v. Cnty. of Bucks*, No. 23-1373, 2025 WL 1701775, at *4 (3d Cir. June 18, 2025) (quoting *Pearson v. Callahan*, 555 U.S. 223, 232 (2009)).  However, the Court will not address Defendants' qualified immunity argument at this time in light of its ruling on Defendants' motion on the bases already stated.

The Court also notes Defendants' arguments that the Court should dismiss with prejudice Barone's "claim for punitive damages" and his "request for declaratory relief."  (Docket No. 21 at 25-27).  In the Amended Complaint, Barone sought monetary relief in the amount of $250,000 per constitutional violation, $400,000 for each of Allegheny County's constitutional violations, $200,000 for each tort injury, three-years' annual salary, future wages/benefits/pensions in an appropriate amount, declaratory relief in saying that the Policy was void ab initio, declaratory relief of a Court order that prohibits any future mandatory vaccination policy, "[t]o add attorneys for limited and full scope on this case," ADR, the right to amend, punitive damages, and any further appropriate relief.  (Docket No. 18 at 26-27).  Barone has not asserted a *claim* for punitive damages or declaratory relief—these are identified in his Amended Complaint as requests for relief, not claims.  The Court will not construe Barone's requests for relief as claims; therefore, the Court need not dismiss them as such.  *Lane v. City of Rockland*, No. 2:22-CV-00058-JAW, 2023 WL 2326247, at *3 (D. Me. Mar. 2, 2023) ("[D]ismissing a claim for punitive damages is inherently different from dismissing punitive damages as a possible remedy for a claim that has not been challenged. The Court does not find it necessary or appropriate at this stage to dismiss Ms. Lane's request for punitive damages on her false imprisonment claim against the City."); *Dittrich v. Seeds*, No. CIV.A.03-CV-6128, 2005 WL 2436648, at *2 (E.D. Pa. Sept. 28, 2005) ("Punitive damages are not an independent cause of action. Rather, punitive damages are a remedy.").

to amend his complaint.  Failure to amend by such time will result in dismissal with prejudice of those claims that today will be dismissed without prejudice.

*s/ W. Scott Hardy*
W. Scott Hardy
United States District Judge

Dated: August 14, 2025

cc/ecf: All counsel of record

       MICHAEL BARONE (**via U.S. Mail**)
       2809 NEW ENGLAND RD.
       WEST MIFFLIN, PA 15122